# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1179

_____

United States of America,

    Appellee,

  v.

Karina Sanchez-Gonzalez,

    Appellant.

\*
\*
\*
\* Appeal from the United States
\* District Court for the District
\* of Minnesota.
\*
\*
\*

_____

Submitted: February 16, 2011
Filed: July 7, 2011

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

  Karina Sanchez-Gonzalez was convicted by a jury of conspiracy to distribute 50 or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and aiding and abetting possession with intent to distribute 50 or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. The district court[1] sentenced Sanchez-Gonzalez to the statutory mandatory minimum of 120 months imprisonment. Sanchez-Gonzalez appeals her conviction and sentence, and we affirm.

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

## I.

We recite the facts in the light most favorable to the verdict. In early 2009, the Ramsey County Sheriff's Department made four undercover purchases of methamphetamine from Manuel Bustos-Moreno. At some point during this time, police received information that Bustos-Moreno often used a female drug courier named Karina. On May 6, 2009, an undercover officer made arrangements for a fifth purchase of methamphetamine with the intention of arresting Bustos-Moreno, as well as any courier involved in the delivery of the methamphetamine.

On May 7, 2009, Sanchez-Gonzalez arrived at the established time and location for the arranged sale of methamphetamine. Sanchez-Gonzalez was immediately arrested and police subsequently found over 50 grams of methamphetamine hidden on her person. Police also located Bustos-Moreno near the scene and promptly arrested him. Shortly thereafter, Sanchez-Gonzalez led police to Bustos-Moreno's "stash apartment," where they discovered a pound of methamphetamine.

Following their arrest, Bustos-Moreno and Sanchez-Gonzalez were jointly indicted for conspiracy to distribute methamphetamine and for possession with intent to distribute methamphetamine. As part of a plea agreement, Sanchez-Gonzalez gave a proffer to the Government in which she described her relationship and prior dealings with Bustos-Moreno. After Sanchez-Gonzalez and the Government entered into their plea agreement, a change of plea hearing was scheduled.

Prior to the change of plea hearing, however, Sanchez-Gonzalez retained new trial counsel and cancelled the change of plea hearing. Sanchez-Gonzalez told the Government that she had changed her mind and now wished to proceed to trial under her prior plea of not guilty. At trial, Sanchez-Gonzalez claimed that she only delivered the methamphetamine for Bustos-Moreno because he had threatened her daughter. After a three-day trial, a jury found Sanchez-Gonzalez guilty on both

counts, and the district court later imposed sentence. Sanchez-Gonzalez appeals, claiming that she received ineffective assistance of counsel in violation of the Sixth Amendment and that the district court erred at sentencing.[2]

## II.

Sanchez-Gonzalez first claims she received ineffective assistance of counsel at trial in violation of the Sixth Amendment and that reversal of her conviction and sentence is therefore required. As Sanchez-Gonzalez acknowledges, however, we review claims of ineffective assistance of counsel on direct appeal only in "exceptional cases." United States v. Hernandez, 281 F.3d 746, 749 (8th Cir. 2002). Instead, claims of this nature are typically reviewed in an action brought under 28 U.S.C. § 2255. Id. An "exceptional case" that justifies our review of the claim on direct appeal exists if the relevant factual record has been fully developed, a failure to consider the claim on direct appeal would constitute a "plain miscarriage of justice," or the alleged error of trial counsel is "readily apparent." United States v. Hubbard, 638 F.3d 866, 869-70 (8th Cir. 2011) (quoting United States v. Ramirez-Hernandez, 449 F.3d 824, 827 (8th Cir. 2006)).

Sanchez-Gonzalez's claim of ineffective assistance of counsel is based on the following remark made by her trial counsel during closing arguments: "Counselor's testimony that the only defense here is duress or coercion or however the instructions of law will give it to you, that's not true. Our defense is not guilty." Sanchez-Gonzalez claims that this statement constituted a waiver of her chosen defense at trial

---

[2]Sanchez-Gonzalez also requests a reversal in the "unlikely event" that the district court erred in instructing the jury that she, as the defendant, bore the burden of proof for the defense of duress. The Supreme Court has held that unless Congress states otherwise, the defendant bears the burden of proof for the defense of duress. See Dixon v. United States, 548 U.S. 1, 17 (2006). Not unexpectedly, we decline the invitation to contradict the Supreme Court.

(i.e., duress) by her trial counsel. Sanchez-Gonzalez fails to persuade us that we should review this issue on direct appeal.

Analyzing Sanchez-Gonzalez's ineffective assistance claim requires further development of the factual record. With the record before us, even assuming that counsel's statement constituted a waiver of a defense, we are unable to determine why trial counsel made the contested statement. This information is critical. For example, if counsel's statement evidenced a legitimate strategic decision as to how to proceed at trial, the statement would not indicate that Sanchez-Gonzalez received constitutionally deficient assistance at trial. See Strickland v. Washington, 466 U.S. 668, 690-91 (1984) (stating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). For this same reason, we cannot conclude that trial counsel's alleged error is readily apparent.

Moreover, declining to consider this claim on appeal would not constitute a plain miscarriage of justice. Sanchez-Gonzalez remains free to pursue her ineffective assistance claim through a section 2255 action. Although Sanchez-Gonzalez argues that a section 2255 action may be deemed untimely if it is filed after we decide this case because more than a year has passed since her conviction, her concern is unfounded. See 28 U.S.C. § 2255(f)(1) (explaining that the one-year limitation on section 2255 petitions runs from "the date on which the judgment of conviction becomes final"); United States v. Hernandez, 436 F.3d 851, 856 (8th Cir. 2006) (noting that a criminal defendant's conviction did not become "final" for the purposes of a section 2255 petition until ninety days after the Eighth Circuit issued its ruling on direct appeal).

Sanchez-Gonzalez next claims that the district court erred when it declined to award her safety-valve relief and to give her a reduction in offense level for acceptance of responsibility. We review each claim for clear error. See United States v. Wineman, 625 F.3d 536, 538 (8th Cir. 2010) (acceptance of responsibility); United

States v. Sanchez, 475 F.3d 978, 980 (8th Cir. 2007) (safety-valve relief). Under this standard of review, we will grant relief only if the district court's conclusions were "so clearly erroneous as to be without foundation." United States v. Nguyen, 339 F.3d 688, 690 (8th Cir. 2003); see also United States v. Bolanos, 409 F.3d 1045, 1049 (8th Cir. 2005).

Under 18 U.S.C. § 3553(f), a district court is permitted to grant safety-valve relief to a criminal defendant and impose a sentence below a statutory mandatory minimum if (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not found to be an organizer, leader, manager, or supervisor of others or to have engaged in a continuing criminal enterprise; and (5) the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense. 18 U.S.C. § 3553(f)(1)-(5); see also United States v. Alvarado-Rivera, 412 F.3d 942, 944-45 (8th Cir. 2005) (en banc). The only element at issue here is whether Sanchez-Gonzalez truthfully provided the Government with all the information and evidence that she had concerning the offense.

In making an assessment of the truthfulness of a defendant's prior statements, a district court may consider discrepancies between the defendant's statements as well as changes in his or her accounts over time. United States v. Guerra-Cabrera, 477 F.3d 1021, 1025 (8th Cir. 2007). Additionally, the district court can draw reasonable inferences from the evidence and need not accept a defendant's innocent explanations for her apparently criminal conduct. Sanchez, 475 F.3d at 981; see also Bolanos, 409 F.3d at 1048 (recognizing that a district court does not commit clear error in denying safety-valve relief if it is plausible that the defendant was untruthful or inconsistent in her statements).

Based on Sanchez-Gonzalez's statements prior to and during trial, we find the district court did not commit clear error in denying safety-valve relief. At trial, Sanchez-Gonzalez testified that she "never took drugs for Bustos-Moreno" and that she "didn't know . . . he sold drugs." However, when the Government asked her why she had stated in a post-arrest interview that "[she] knew that Bustos used a female to transport narcotics to Minnesota," Sanchez-Gonzalez responded, "I told him that his, his friend and—that he had also participated, something like that. That a woman arrived and I, I don't know, I think it was a story that he made up just to scare me or something like that. I don't know." In addition, Sanchez-Gonzalez admitted at trial that she allowed her apartment to be used as a stash house for drugs in return for money.

Sanchez-Gonzalez's explanation for transporting drugs on May 7—because she was "very, very scared"—was similarly contradicted. Evidence admitted at trial showed that after her arrest, Sanchez-Gonzalez never told the police that she was scared of Bustos-Moreno or that he had threatened her in any way. Moreover, police officers described Sanchez-Gonzalez's demeanor immediately after her arrest as not "distraught at all" and that Sanchez-Gonzalez "wasn't crying." Officer John Saumweber, who spent nearly an hour with Sanchez-Gonzalez after her arrest, testified that she never told him that Bustos-Moreno made her deliver the drugs or that she was afraid of Bustos-Moreno. Viewing this evidence in light of the entire record, it was not clear error for the district court to conclude that Sanchez-Gonzalez's statements to police and at trial were either untruthful or inconsistent. See Bolanos, 409 F.3d at 1048.

Because the district court did not clearly err when it withheld safety-valve relief to Sanchez-Gonzalez, we need not address her final contention that she was entitled to a two-point reduction for acceptance of responsibility. Even if the district court erred in finding that Sanchez-Gonzalez did not qualify for an acceptance-of-responsibility reduction, she was not prejudiced by the alleged error because the court

could not have sentenced her below the mandatory minimum of 120 months imprisonment.  See United States v. DeCoteau, 630 F.3d 1091, 1098 (8th Cir. 2011) (explaining that when a statutory mandatory minimum applies, a district court can only sentence below the mandatory minimum by granting safety-valve relief or through a motion by the Government for substantial assistance).

## III.

For the foregoing reasons, we affirm Sanchez-Gonzalez's conviction and sentence.