# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1586

_____

United States of America

*Plaintiff - Appellee*

v.

Jerry Golliher

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Rapid City
_____

Submitted: November 20, 2015
Filed: April 28, 2016
_____

Before SMITH, BYE, and BENTON, Circuit Judges.
_____

SMITH, Circuit Judge.

Jerry Golliher was convicted by a jury of attempted commercial sex trafficking of a minor. He appeals, arguing that his counsel was ineffective and that the district court[1] should have admitted certain e-mails, provided the trial transcript to the jury

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

in response to a jury question, and stricken the prosecutor's allegedly improper statements. We affirm.

## I. *Background*

Law enforcement placed the following advertisement on a website: "Here for the [Biker] Rally with 2 younger girls that are down for most anything. Age makes no difference so don't be afraid to ask." Golliher responded to that Internet ad by e-mail, not knowing that law enforcement had placed it as part of a sex-trafficking sting operation. The officer who received Golliher's e-mail responded, "Bobbi is 13 almost 14 and Toni is 12. They both have experience and are good to go. Let me know what you [think]." After an interchange that included age-regressed photos and a discussion of price and a meeting location, Golliher, expecting to pick up Bobbi, met undercover law enforcement. Golliher got out of his car and got into the car of the undercover officer, whom Golliher believed to be Bobbi's pimp. When the officer asked Golliher what he wanted, Golliher indicated that he was willing to pay the discussed $150 for half an hour with Bobbi. The officer promptly arrested Golliher. Golliher was charged with one count of attempted commercial sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), and 1594(a).

Before trial, the government sought to prohibit Golliher from introducing at trial e-mails that he had previously exchanged with purported prostitutes in which he rebuffed their services upon learning that they were underage. Golliher asserts that the e-mails would have impacted the jury's deliberations significantly because they showed that he was not interested in underage sex. The court excluded the e-mails as hearsay. But the court and the prosecution recognized that Golliher might be permitted to introduce the e-mails as a prior consistent statement should the prosecution call into question whether the events took place. Golliher never recounted the events surrounding those e-mails during his voluntary testimony nor offered the e-mails for admission into evidence.

During the prosecutor's closing argument, he discussed the law of entrapment and the elements of the crime of attempt. The prosecutor explained the entrapment defense this way:

> Let's flip over to the next instruction, ladies and gentlemen. Instruction number 3. Entrapment. What . . . you have to decide is was the defendant willing to do this or did somebody have to talk him into it? Did somebody have to twist his arm? In this case, the evidence showed two things. The government proved beyond a reasonable doubt that the defendant was willing [on] August 2, 2013, to go out on to the Internet to try to obtain a young girl for sex in exchange for $150. The government proved beyond a reasonable doubt that nobody forced him to do it. Nobody forced him to do it. The government has to prove one of these two things. Not both, but the evidence shows that he willingly did it and the evidence shows that nobody forced him to do it. He did it all on his own. He knew what he was doing and he took those steps all on his own.

The prosecutor made the following statements about the crime of attempt:

> The other issue is whether or not there was a substantial step and whether or not he took that step. Ladies and gentlemen, we don't have to prove that he had sex, obviously, but we also don't have to prove that he would have had sex. It is up to you to decide whether a substantial step was made. And I would focus you on the section down here which is that it not be incompatible with innocence, yet it must be necessary to the consummation of the crime and to be of such a nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute. We don't have to prove that he would have done it; we have to prove that he took a substantial step to engage in commercial sex trafficking, not that at the end of the day that was what he wanted. That's not what we have to prove.

-3-

The prosecutor also said the following on the same topic:

> And then the next story was, you know, I wouldn't have gone through with it; I was pushed into it. And then he agreed that he showed up, that he was the one who was chatting, that he showed up, and then he said, "But I didn't agree to it. I was just looking into it. I hadn't decided." Ladies and gentlemen, that is not a defense. If you decide that he took a substantial step enough at the moment that he was arrested, if that at that moment the substantial step had been made, then this case is done. It doesn't matter whether or not he was going—what he was going to do at his house.

Also during closing argument, the prosecutor used the first-person pronouns *we* and *I* in asking the jury to convict Golliher. The prosecutor concluded his summation with the following:

> The government has proved [its] case, all of these elements that it was [not] an entrapment, beyond a reasonable doubt. And we ask that as you deliberate, we are confident as you deliberate, that you will agree the defendant is guilty beyond a reasonable doubt of going on to the Internet and attempting to solicit a minor for sex for $150 on August 2, 2013. Thank you.

And the prosecutor ended his rebuttal this way:

> He's guilty of attempted commercial sex trafficking. Of every element that we are required to prove, he's guilty beyond a reasonable doubt and I ask you to find him as such. Thank you.

After the jury retired to deliberate, the jury foreperson sent a note to the court expressing confusion about the evidence:

> We have confusion on the age of Bobbi—being 13 or 14. There was an e-mail that stated she was 13 and the court proceedings stated Bobbi as 14.

-4-

The court responded:

> As a judge, I cannot comment on the evidence. It is your job as the jury to determine the facts. You need to rely on your own recollection of the evidence and unanimously agree beyond a reasonable doubt.
>
> This instruction should be taken together with the instructions I previously gave to you. The instructions must be considered as a whole.

After the jury returned a guilty verdict, the district court entered a final judgment of conviction. Golliher appeals. We have jurisdiction to review the conviction pursuant to 28 U.S.C. § 1291.

## II. *Discussion*

On appeal, Golliher argues that (A) his trial counsel provided ineffective assistance of counsel; (B) the district court abused its discretion by not admitting Golliher's e-mails under the residual exception to the hearsay rule; (C) the district court plainly erred by not providing the trial transcript to the jurors in response to their question; and (D) the district court plainly erred by not striking certain statements that the prosecutor made to the jury.

### A. *Ineffective Assistance of Counsel*

Golliher argues that it is "readily apparent" that his trial counsel was ineffective by not seeking to admit the allegedly exculpatory e-mails through the business records exception to the hearsay rule under Rule 803(6) of the Federal Rules of Evidence. He asserts that these e-mails contain conversations showing that he stopped communicating with any purported prostitute once he learned that she was a minor. Golliher used a Yahoo e-mail account. He reasons that these e-mails are Yahoo's business records. As such, he argues that his attorney should have sought their

-5-

admission with the help of a records custodian from Yahoo. He contends that his attorney's failure to do so constituted ineffective assistance of counsel. We decline to address this argument.

"[W]e review claims of ineffective assistance of counsel on direct appeal only in 'exceptional cases.'" *United States v. Sanchez-Gonzalez*, 643 F.3d 626, 628 (8th Cir. 2011) (citation omitted); *see also United States v. Soriano-Hernandez*, 310 F.3d 1099, 1105 & n.9 (8th Cir. 2002). One such exceptional case exists when "the alleged error of trial counsel is 'readily apparent.'" *Sanchez-Gonzalez*, 643 F.3d at 628–29 (citation omitted). We decline to consider Golliher's argument because he has not shown that his case is exceptional, warranting our examination of his claim of ineffective assistance of counsel on direct appeal rather than through a collateral attack in a habeas corpus action. It is not readily apparent that the e-mails would have been admissible in the manner that Golliher contends. On this record, we are unwilling to address Golliher's ineffective-assistance claim.

B. *Residual Exception to the Hearsay Rule*

The district court concluded that Golliher's e-mails, which allegedly show him rebuffing underage sex, were inadmissible under the residual exception to the hearsay rule, Rule 807 of the Federal Rules of Evidence. Golliher argues that the e-mails are admissible under the residual exception because they would have been more probative than any other form of evidence on the matter. Because Golliher has failed to provide us with any information with which to evaluate the probative quality of the e-mails, we affirm.

Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure requires an appellant's argument section to include "citations to the . . . parts of the record on which the appellant relies." "We have in the past . . . refused to consider arguments not supported by proper [record] citations." *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1055 n.14 (8th Cir. 2002) (citation omitted).

We may therefore refuse to consider a challenge to a district court's decision to exclude evidence when the appellant fails to direct us to the part of the record that contains the substance of the excluded evidence, especially when the substance is necessary to evaluate admissibility under the Federal Rules of Evidence. *See Cody v. Harris*, 409 F.3d 853, 860–61 (7th Cir. 2005) (declining to evaluate defendant's Rule 807 challenge because he had "not provided enough information to evaluate whether [the Rule 807] criteria have been met").

In this case, Golliher seeks to have certain e-mails admitted under the residual exception to the hearsay rule. That exception provides as follows:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) it is offered as evidence of a material fact;
>
> *(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts*; and
>
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a) (emphasis added). We are unable to evaluate whether Golliher's e-mails satisfy these requirements because Golliher has not presented their actual substance in any manner, either by reproducing them in the briefs or appendix or by providing record citations to them. The only record citation that Golliher provides is to the pretrial conference where he asked the court to admit the e-mails and the court excluded them. Golliher should have, at that time, complied with Rule 103(a)(2) of

the Federal Rules of Evidence by "inform[ing] the court of [the e-mails'] substance by an offer of proof." Without an offer of proof to preserve in the record the substance of the excluded evidence, Golliher's arguments are left unsupported and unpersuasive. For example, Golliher asserts without any citation to the record that these e-mails are more probative than other evidence under the third prong of Rule 807. But we have no way of evaluating whether they are probative at all, let alone whether their probative character outweighed other forms of available evidence such as Golliher's own voluntary testimony. Accordingly, we decline to overturn the district court's exclusion of these e-mails because Golliher has failed to adhere to the requirements of Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure.

## C. *The Jury's Question*

During jury deliberations, the foreperson sent a note to the court expressing confusion about whether the evidence showed that Bobbi was 13 or 14. In the note, the foreperson observed that documentary evidence showed that she was 13 but testimony had indicated that she was 14. The court replied, instructing the jurors to rely upon their own recollection. Golliher argues that it was plain error for the court not to offer the jurors the opportunity to review the relevant portions of the trial transcript during their deliberations as part of its supplemental instruction. We disagree.

Because Golliher did not object to the court's supplemental instruction, we review for plain error. *United States v. Hansen*, 791 F.3d 863, 870 (8th Cir. 2015) (citing Fed. R. Crim. P. 30(d), 52(b)). Under this standard, Golliher must show "(1) an error, (2) that was plain, (3) [that] affects substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations and citations omitted).

We have held that "[o]nly if it can be demonstrated that the failure to permit the reading of requested testimony created unfairness to the defendant is the defendant

-8-

entitled to have the jury informed as a matter of right." *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir. 1981) (citation omitted). Golliher alleges that the importance of the subject matter about which the jury expressed confusion renders the court's failure to offer the transcript to the jury unfair. There is no doubt that the jury's conclusion that Bobbi was 13 instead of 14 had a significant impact on his sentence.[2] But that does not make the district court's failure to offer the trial transcript to the jury somehow erroneous or prejudicially unfair. Golliher has presented no evidence from the trial transcript indicating that Bobbi was actually 14. The government's brief quotes seven examples of trial testimony suggesting that Bobbi was 13, not 14. Put simply, Golliher has failed to make the required showing that the court's supplemental instruction constituted an error—plain or otherwise.

### D. *Prosecutorial Misconduct*

Lastly, Golliher argues that the district court plainly erred by failing to strike alleged prosecutorial misconduct in the prosecutor's statements to the jury. First, he argues that the prosecutor misstated the law of entrapment by repeatedly using the phrase "nobody forced him to do it." Second, he argues that the prosecutor told the jury that the government did not have to prove that Golliher intended to commit the crime. Third, he argues that the prosecutor improperly vouched for Golliher's guilt by using the personal pronouns *I* and *we*. Our review is for plain error because Golliher did not object to any of these statements. *See Hansen*, 791 F.3d at 870 (citing Fed. R. Crim. P. 30(d), 52(b)).

### 1. *Misstatement of the Law of Entrapment*

Golliher first argues that the prosecutor misstated the law of entrapment by equating persuasion with force. During his closing argument, the prosecutor said,

---

[2]The government charged Golliher with violation of 18 U.S.C. § 1591. Under that section, a defendant's minimum sentence increases from 10 years to 15 years if the minor was below age 14.

"The government proved beyond a reasonable doubt that nobody forced him to do it. . . . The government has to prove one of these two things. Not both, but the evidence shows that he willingly did it and the evidence shows that nobody forced him to do it." Golliher reasons that the prosecutor's statements were improper. We agree. Nevertheless, we affirm because these statements were harmless in light of the court's correct instructions to the jury.

The district court gave the following jury instruction on the law of entrapment:

One of the issues in this case is whether the defendant was entrapped. The prosecution has the burden of proving beyond a reasonable doubt that the defendant was not entrapped [because] either:

1. The defendant was willing to commit the crime of sex trafficking of a child before he was approached or contacted by law enforcement agents or someone acting for the government.

Or 2. The government or someone acting for the government did not *persuade or talk the defendant into committing the crime* of sex trafficking of a child.

If you find that the prosecution proved at least one of these two things beyond a reasonable doubt, then you must reject the defendant's claim of entrapment. If you find the prosecution failed to prove at least one of these two things beyond a reasonable doubt, then you must find the defendant not guilty.

(Emphasis added.) There is a discrepancy between the law of entrapment as instructed by the court and as represented by the prosecutor. The second prong of the entrapment instruction required the government to prove that it did not "persuade or talk the defendant into committing the crime." But the prosecutor equated this standard with something akin to arm twisting or force. The prosecutor said, "The government has to prove one of these two things," "that the defendant was willing"

-10-

or "that nobody forced him to do it." Such a discrepancy amounts to more than inartful recitation of the standard; it eroded the presumption of innocence by lowering the government's burden of proof. *See Kellogg v. Skon*, 176 F.3d 447, 451 (8th Cir. 1999).

But improper statements alone do not warrant a new trial under plain-error review. "In determining whether the prosecutor's argument rendered the trial unfair, we consider the totality of the circumstances." *Id.* (citations omitted). Where the court properly instructs the jury, defense counsel reinforces the court's instruction, and there is no objection at trial, an improper statement of the law by the prosecutor does not undermine the fairness of the trial. *Id.* In this case, Golliher has not asserted that the court improperly instructed the jury. Indeed, his trial counsel openly approved of the instructions, describing them as "just wonderful." And he admonished the jury not to "underestimate the work that went into that by the Court and everybody else. . . . [T]his is not a talking points memo. This is the law and the only way this system works is if you follow the law and follow that oath."

Moreover, the evidence in this case shows that Golliher was not persuaded or talked into obtaining 13-year-old Bobbi for sex. Golliher drove to the predetermined location, where he expected to meet Bobbi's pimp. He got out of his car and into the undercover officer's car. The undercover officer asked Golliher what he was looking for. Golliher replied, "Probably half [an hour]." When the undercover officer asked Golliher if he had the money, Golliher pulled cash out of his pocket. Finally, Golliher told the undercover officer, "I am not going to hurt her. I am not going to scare her. I am a real gentle guy." In short, the prosecutor's improper statement of the law was harmless because the evidence indicates that Golliher needed no persuasion. He did not need to be talked into anything; he willfully sought to obtain 13-year-old Bobbi for sex.

### 2. *Intent*

Golliher next argues that the prosecutor removed intent from the elements of the crime. He points to two statements by the prosecutor. First, the prosecutor said,

"We don't have to prove that he would have done it; we have to prove that he took a substantial step to engage in commercial sex trafficking, not that at the end of the day that was what he wanted." Second, the prosecutor said, "It doesn't matter whether or not he was going—what he was going to do at his house." Golliher argues that these statements are a misstatement of the law. We disagree.

The context of these statements makes clear that the prosecutor was discussing the substantial step required to find attempt. In that context, these statements were not plainly improper. And because the court properly instructed the jury with respect to the required element of intent, any impropriety was harmless. *See Kellogg*, 176 F.3d at 451.

### 3. *Vouching*

Golliher finally argues that the prosecutor improperly vouched for Golliher's guilt. He points to the closing lines of the prosecutor's summation and rebuttal where the prosecutor made the following two statements using the first-person pronouns *we* and *I*: "[W]e are confident as you deliberate, that you will agree the defendant is guilty beyond a reasonable doubt." And, "I ask you to find him" guilty. Golliher argues that these statements show that the prosecutor "clearly inject[ed] personal beliefs into the process." We disagree.

"Although the use of [the first person by a prosecutor during arguments] has been often criticized (and discouraged) by this court and others, it is not always improper." *United States v. Bentley*, 561 F.3d 803, 811 (8th Cir. 2009) (citations omitted). "It is only improper when it suggests that the government has special knowledge of evidence not presented to the jury, carries an implied guarantee of truthfulness, or expresses a personal opinion about credibility." *Id.* at 812 (citations omitted). Moreover, we have held that passing use of the first person "is not plain error if it is used 'to refer the jury to the government's evidence and to summarize the government's case against the defendants.'" *Id.* (citation omitted).

-12-

In this case, the statements of which Golliher complains do not indicate anything about the personal belief of the prosecutor. In both cases, the prosecutor is urging the jury to consider the evidence and the elements of the crime and to find Golliher guilty. Accordingly, these statements were not plainly improper.

### III. *Conclusion*

For these reasons, we affirm Golliher's conviction.

_____